Thank you, Judge. My name is Carter Law. I'm here for Jim Norris. My plan this morning is to address largely the first issue. I'm prepared to answer questions on the second issue, and I will make brief comment about the second issue. But that's how I intend to go forward. It's my sense that the second issue, to a certain extent, relies upon the first. The first issue is concern about the procedure with which Mr. Norris's motion and his pro se motion for early termination or to modify conditions of supervised release was handled. So with that preliminary housekeeping, I'm prepared to go forward if that meets with the Court's approval. If there is to be a right to move a district court for early termination of supervised release or to modify the conditions of supervised release, it has to be a meaningful right. In Mr. Norris's case, he filed a pro se motion. He did not ask specifically for a hearing. He did not ask specifically for appointment of counsel. He is a layperson. There never was a response of any type from the government. What was the motion? The motion was to – for early termination of his supervised release. Judge, I believe it was filed in September of 2021 or for modification of the conditions of that supervised release. So was it one or the other or both? Yes, both. Mr. Norris himself subsequently supplemented the motion. There was never any pleading filed by the government. There was never appointment of counsel. The only thing that occurred of an official nature was that on October 26th of 2021, the Probation Office gave a so-called supervision summary to the district court. It filed that document under seal. The document did not even have a docket number in the district court's docket. It was never served upon Mr. Norris. Mr. – the local rules provide for service of sealed documents not through the electronic filing system that the court has, but rather by paper on a person who doesn't have access to PACER, which indeed Mr. Norris did not. One of the conditions of supervised release is that he is not permitted to have essentially access to a computer and therefore to the internet without the permission of the Probation Office and therefore he doesn't have access to PACER. This supervision summary included a brief paragraph on the first page that indicated that Mr. Norris had been on supervision at the time of the summer of 2021 for 10 years and I think approximately three months. The Probation Office certainly did not indicate in any way that Mr. Norris was not eligible for early termination. A year had passed. Let me get this clear. He was brought forth for revocation, correct? In the summer of 21, yes. And was revoked? Yes. And did not appeal? That's correct. Okay. And subsequent to that, he files his own motion to terminate the new supervision orders that are put in place? The existing supervision. Correct, Judge. That's correct. And it seems the only operative part of that could be the desire to have it terminated because don't the rules specifically require that there be a full year under the supervision before a modification could take place? The way the rule is written, Judge, is that a request for termination can occur before... I don't have it in front of me and I apologize. I believe that it says upon expiration of a year, at any time prior to the expiration of the year of a termination of the term of supervised release is 3583E, I believe, Judge. Because it seems that in part what seems like is occurring is an attempt to challenge those supervised release conditions imposed on the revocation that were not appealed through a different means by seeking to have an early termination and I guess also modification. But it seems to be what likely should have been attempted by appealing the initial revocation. Well, Judge, I was not his attorney at the time of the revocation. Maybe that would have been a better way, but I'm not aware of anything that says Mr. Norris is not entitled to move for early termination and or for modification of his conditions separately. In other words, I've not seen any case law that says, for example, you have to appeal directly the conditions at the time and within the appellate time after those conditions are imposed or you cannot later move for early termination or for modification of your conditions. I'm not aware that one is a condition precedent, in other words, to the second. So those being two different things anyway, maybe at the revocation hearing did he seek to modify? I don't sort of see, Judge, can you tweak this computer internet condition? As I read the transcript of the supervised release revocation hearing, Judge, which is my only access to what happened there, I don't see anything that says he did. I don't see that there was anything in writing filed in the manner of an objection. So it wasn't really a part of that revocation case as best as you can tell? That's correct, Judge. And as far as I know, the supervised release conditions that were imposed subsequent to the revocation are the same as the conditions that were posed in the original sentencing back in 2009, I think February 2009. They've been the conditions all along. And so I'm not aware that Mr. Norris forewent the right to seek early termination and modifications and or, obviously, modification of conditions by not appealing the re-imposition of those sentences back in the summer of 2020. Counsel, I'd like to go back to the report that was not given to Mr. Norris. Yes. Was the issue there really whether it contained new information that he did not have? I think that's what I'd like you to address. I think that's fair, Judge, and I'm into my rebuttal time, but I would be happy to answer that question if I may. The case law with which the government does not disagree says that something that includes new information must be disclosed. I'm paraphrasing. The supervision summary, which is RDoC 72, that was filed by the probation office and given to the district court contains a very brief paragraph of factual allegations in their nature. It looks to me to be a summary of some of the violation reports that were previously filed, except that it includes this quote, which is essentially that Mr. Norris believes that he is not required to abide by the court-ordered conditions of supervision. I have been through all of the reports of violations that preceded the revocation hearing, revocation transcript, and, in fact, the revocation judgment in which the court recites the basis for its revocation, and I've never seen that statement anywhere. It strikes me as a really, I don't mean to use the word prejudicial as a term of art, but it strikes me as a really impactful allegation of facts. It's, number one, it's attributed to Mr. Norris, and number two, it's kind of a thumb in your nose at the court, I don't think I have to abide by these conditions anyway, which suggests a problem to me. All right. Thank you. And it is new, I think. Thank you, Judge. Thank you, Ms. Long. I'll reserve the rest of my time. Mr. Goldstein. Good morning. May it please the Court. My name is Zach Bluestone, and I'm representing the United States of America. Mr. Norris's appeal focuses largely on procedure, but it's important to not lose sight of the substance of his underlying request. Just one week after the revocation of his lifetime supervised release, Mr. Norris boldly sought to terminate supervision altogether, or alternatively, to modify a condition that he had repeatedly violated. And this was despite the fact that the district court had sympathized with Mr. Norris at his revocation hearing, reducing his new term of supervision to 20 years, with more relief to come if he was compliant. Instead, and rather than pursuing a direct appeal, Mr. Norris filed his motion to terminate or modify. Because Mr. Norris was statutorily ineligible for termination, because he offered no meaningful basis for modification, the denial of his motion was inevitable, and none of the procedural claims he raises in his appeal would have changed that outcome. Whether it was inevitable or not, I think maybe it's beyond the scope of this appeal, but I'd like to talk about the report that was written and then not given to Mr. Norris. Sure. As I understand it, the government agrees or concedes that if it contains new information, that that changes things. Why doesn't the statement that was attributed to Mr. Norris about not having to abide by the conditions, why isn't that new information? And maybe more importantly, it's my understanding that the U.S. Attorney's Office was contacted for a recommendation. First of all, why isn't that an ex parte communication, and why isn't that new information that he was entitled to receive and be able to respond to? Sure. I'll take those points in order. I think a close examination of the supervision summary, which is document 72, makes it clear that the probation office was referring to previous statements that Mr. Norris had made, and in fact had admitted to at his revocation hearing. They appeared in documents 49, which was the restricted petition, as well as the sentencing computation, which was document 61. And if you look at document 72, it states that while in supervision, seven violation reports had been submitted to the court. And then in the very next sentence, it summarizes those violation reports. Mr. Norris' noncompliance included possessing internet-capable devices without permission, various other violations, and finally, his belief that he did not have to abide by the court-ordered special conditions. That refers to a statement that, again, was in a petition where Mr. Norris indicated he did not believe that the probation office had the authority to restrict his internet usage. I think in the context of the supervision summary, given that it's prefaced by his violation reports, that's the only reasonable conclusion to reach. Isn't that a little bit different, though, saying I don't think that you have the authority to do that, versus I'm not going to comply? And you could say, a follow-up to the first comment might be, I don't think the probation office has the authority to limit this because X, Y, and Z, but I know I've got to comply, versus I just don't think I have to comply with the terms of my supervision. I think that there could be that distinction, but if you take a look at the petition itself, it has a lengthy explanation of what actually occurred. And the probation officer was meeting with him in that case, talking with him about the fact that he had repeatedly accessed the internet. And his response to that, I think it describes it as an angry response, where he protested the probation officer and told him, basically, I don't have to do that. And that, again, is... You said, I told you, I basically, is that what he said? I mean, is that... I guess that I'm still trying to get at the question of whether the statement that's been attributed to him, I don't have to do that, I don't have to abide, is something that he already had information about. Yeah, well, I'd be happy to read it, the statement that was in the petition, which I think is, I think the supervision summary is a fair description of it. It says, when advising the offender that he had no permission to access the internet through any means and that he must cease access immediately, he became angry and stated that accessing the internet is not something that the U.S. Probation Office can legally restrict. He further went on to advise that the probation officer was torturing people and that his conscience, if he were a probation officer, would not allow him to enforce these conditions on supervision. I mean, I think his violations, together with those statements, made it pretty clear that he didn't think that he had to abide by the conditions of a supervised release. And I think maybe more importantly, if Mr. Norris wanted to challenge the violation, the opportunity to do so was at his revocation hearing. This information was all before him at that point. He had the opportunity to raise it with Judge Limbaugh. And frequently, when offenders are revoked, they do admit to certain violations but not others. So he certainly had the opportunity to do that. At no point did he object or describe to the District Court in any way that he didn't believe that this was an accurate summary. And that may have been a more efficient way to do it and sort of, you know, let's have the judge have this in front of him in the course of the hearing where everybody's present. But is there anything that prohibits him? Let's say there was something changed in the two weeks after the that, you know, what would prohibit him from doing this? And again, I understand your argument to say, really, that was the better place. But I'm not sure it precludes a later motion to modify under the statute. I completely agree, Judge Kelly. And I think that if he had done that here, if he had put in his motion to modify that he disagreed or that he had new for the court to consider, he would have been able to do that even when he did file his motion, which was just one week after his revocation hearing. Now he could not have sought termination on that basis. He does have to wait one year under 3583E1. That does require one year to have elapsed. And in the 28 jail letters, there was some discussion at this point. That applies only to the new revocation sentence, which is a completely separate sentence than his original revocation sentence. So there is no real dispute that he had not been on his current revocation sentence for less than one year. In fact, again, he hadn't even commenced his revocation sentence when he filed this because he was still in custody when he actually mailed the motion. And what about the other information concerning the recommendation from the U.S. Attorney? I'm sorry. There was no new information from the U.S. Attorney. The probation office merely sought the U.S. Attorney's office's position. And if you look at the statement, it just says that our office was opposed to early termination or modification at that time. Is that new information that he would be entitled to know? I don't think that the government's position is new information or something that would prejudice. I mean, and the standard isn't just that it's new information. Alanis refers to new prejudicial information. That's pretty important. I don't know how knowing what the government's position was would, I mean, he can't, him knowing that wouldn't have allowed him to respond in a different way. It's my understanding that it's perfectly common and acceptable for there to be communication between the probation office and the court. But what about the U.S. Attorney in the court? Why is it not an ex parte communication? That's their opposing counsel? Sure. I think that the court was well aware of what Mr. Norris's position was because he filed the motion. I don't think that it would be improper to seek the government's position. And again, I think what's important... Well, maybe if he'd been told. But what, not to ask you a question, but I think that what's important is that there's no conceivable impact that that could have had. If he knew that the government did or did not support... So it's not prejudicial. Correct. Correct. And prejudice is the one other point that I wanted to return back to that we the fact that the denial was inevitable here is deeply important to the court's consideration of all of these issues because whether or not Mr. Norris had properly preserved his claims, which the government doesn't believe that he did, there still would be a harmlessness analysis that would apply. And I would encourage the court to not wade into these issues if it determines that the denial of this motion was inevitable. And I think that it was not only because of the statutory ineligibility for the motion to terminate, but also for the modification. I mean, it's critical to just come back to the fact that he had just been revoked for repeatedly violating the conditions of a supervised release. And this court in the Trimble case, for example, has considered incorrigibility while in supervision as a key factor. And that he violated his internet condition without having directly appealed it or challenged it in any way, I think in and of itself is a basis to justify the continuation of that condition until he showed that he was able to abide by it. Seeing... Unless there are no... Unless there are any further questions, the government would ask that this court affirm the district court's denial of Mr. Thank you. Thank you, Mr. Bloxtown. That's a lot. I've got a minute. One of the things that jumps out at me that the government has repeated is the inevitability of remand. And I think that's far from clear, and I certainly think it's something that we can't assume. And I think it's not without meaning that Judge Limbaugh appears to have been moved by Mr. Norris's ability to give allocution in reducing his supervised release from lifetime to 20 years. So due to time, I'm going to interject here. How is it prejudicial to your client that he did not have the information about the recommendation from the U.S. attorney? Well, number one, the U.S. attorney was shared, had the supervision summary, which we didn't. That's information that's embedded in the government giving the probation office its position. And number two, it's always significant if the government opposes it. Anytime I have ever sought early termination on a client's behalf, I contact the probation office and the U.S. attorney's office. Because in my experience, if the court is aware that the U.S. attorney's office doesn't oppose, for example, that's extremely significant. On the other hand, if the U.S. attorney's office opposes, that's equally significant. It may have been information that would have led Mr. Norris to behave differently had he known that. We can't know. But that's why, and that's the core of this appeal, is that the procedure by which the, and I'm sorry, I'm in my red. You can finish your thought. The procedure by which the probation office sort of whispered in the district court's ear things that had not been in front of the court before, not at revocation, never before. This was new information unknown to anyone until October 26th. And the fact that it shared that information with the U.S. attorney's office and included that new information in its supervision summary to the district court, the district court relied solely on that supervision summary and summarily denied. That procedure renders a motion for early termination and modification of conditions futile. I mean, if it can be decided on the basis of this whispering in the district court's ear, the fundamental fairness at the very least is thrown out the window. If you have any other questions, we did address the second issue in our reply brief. There are a couple of cases, U.S. v. West and U.S. v. Simpson, a dissent, I believe, from Judge Kelly, that I would just urge the court to remember. Thank you, Ms. Law. Thank you kindly. The court thanks both counsel for participation in the argument this morning. In the briefing that you submitted, we will continue to review the case and render a decision in due course.